Our first case this morning is Daniels v. United States. Ms. Brown? Yes, thank you, Your Honor. May it please the Court, good morning. I think this case really comes down to two points. First is that I think that Mr. and Mrs. Daniels, who are here today, are the kind of taxpayers that Congress wanted to give a forum to. They are law-abiding taxpayers. Don't they have a forum in the tax court? No. Why not? Because they didn't have any upfront forum because there was never any notice of deficiency because the IRS's position is that the tax that is owed is this $5.5 million. A collection remedy? Well, Your Honor, it's really not the same. I would submit to Your Honor that they're not fungible, the remedies. At the collection remedy, as I understood it, you can tell me if I'm wrong, your clients would have an opportunity to present the argument as to why they shouldn't be subject to the tax that the government wants. And that argument would be made to somebody in the administrative system, right? Yes, Your Honor. And then they'd have an appeal to the tax court. Well, Your Honor, I think it would go to the tax court. Is that right? I think Your Honor is correct. Is there any adjudicated forum after the tax court? Well, in other words, that's another route to get to a circuit court or to an Article III court. You can get Article III review. Yes, Your Honor, but my position would be that really the range of issues that are material and probative in a collection proceeding are not the same as the issues that are material and probative in a tax refund proceeding. That's really the first point. The second point... Your client would make a different argument in a collection setting as to why they don't owe the tax a different argument that they would make if there had been a deficiency notice? No, the client would make the same argument, but the extent to which the court would rule it was material and probative is different when the issues before the court is whether or not a taxpayer is entitled to a refund is different from what the issues at the collection hearing stage. I will also say, Your Honor, I will certainly not... I'm sorry, how are those issues different? I don't see the issue is whether or not, at either stage, is whether or not they should have to pay those taxes, whether they should have to pay them at all or whether they did pay them and should get that money back. Either way, it's still a focus on the merits of the underlying tax issue in either event. I would submit to you it's certainly different. I would say it's somewhat different in the administrative process because there's already been a proceeding. There's been a tax refund filed. There's been an administrative process reviewing the merits of the tax refund, and the tax refund was denied. That is the letter that triggered this process and the letter that the IRS gives. I would say to Your Honors that the IRS does not think that a collection remedy is the same as going to the court of claims or the route that brings us here today. You may remember in the record there is the letter that the IRS sends to the Daniels saying your tax refund claim is denied. Your options are to go to the district court or to the claims court. So they're really not the same. I don't think, Your Honor, that all procedure, because there's procedure about issues, at the collection stage where we're really kind of past the liability stage, while there might be some... I understand what Your Honor is saying with respect to the way that that is worded. In all practical realities, that is not where tax refund arguments and cases are litigated. But this isn't a tax refund case because they didn't pay the entire tax. That's what the jurisdictional statutes and interpretations thereof have required. Well, it would still be a tax refund case, Your Honor, respectfully, because they're claiming that they overpaid the tax. They paid almost $4 million. Not in the court of claims, court of federal claims, or in the district courts. We're bound by the Supreme Court's decision. Well, I think, actually, I disagree with Your Honor on that. We're not bound by the Supreme Court? We certainly are bound by the precedent of the Supreme Court. But the precedent of the Supreme Court does not apply to this situation that is before you today. And I think that's really the key to the case. What makes this situation, ma'am, different from other cases in which, in cases in this court, we have precedent in our court that has said you've got to pay on full if you want to get access to the court of federal claims? Because the way the Supreme Court framed the case and the precedent that is binding is as this, and I'm just now reading the first paragraph. I wasn't asking, I'm asking you about our precedent. We have a long line of cases, going back to the court of claims, that holds, I believe, that the taxpayer has to pay in full in order to gain access to the court system that you want to gain access to, which is the court of federal claims to us. Yes, and I acknowledge. And I'm bound by those cases. Well, I acknowledge. Assume that there is no Supreme Court law at all. Assume that floor had never been decided. You would have to convince me that your case somehow is significantly different from the long line of precedent in our court before I would have authority to agree to your argument as a matter of jurisdiction. Your Honor, I don't think we have any disagreement with that. I do think what's key to what Your Honor has said, though, is that you do, you do not have Supreme Court precedent with respect to this fact pattern. You have stare decisis. You have your own court precedent. In our court. Yes. Don't you have to say, in essence, you understand that this panel can do nothing about our existing precedent. You have to say to us that you hope that we would ask our colleagues to sit in bank and to reverse our existing precedent. And that is what we are here to do. I mean, this is the way the process goes. But let me say, if I may, Your Honor. Can I ask you just one other question? Yes. My understanding is that your first line of relief was to file in the United States District Court, I believe, in New Jersey? Correct. Is that correct? And while that case was pending, before it was decided, you filed in the Court of Federal Claims? Yes. Now, under 28 U.S.C. 1500, the Court of Federal Claims is divested of jurisdiction if, when you file there, there's a pending case elsewhere. And I believe that argument was raised below, Your Honor. I do understand what Your Honor is saying, but the case went through. What I'm trying to say is it may well be that you've got two hills you'd have to climb. Oh, boy. Well. The first would be the so-called Flora Hill. I would guess in for a dime, in for a dollar.  If I may say, though, with respect to what I think makes this case unique is the fact that you have here, you have a substantial effort to pay really an outsized tax. I mean, it's a $5.5 million tax bill, and almost $4 million has been paid. I'm not so great in math, certainly on my feet here, but it's about 70%. That's one thing. Secondly, there was no notice of deficiency issued because the IRS agrees that that is what the tax should have been. There is here. I also think it makes a difference that the nature of the compensation event. In a way, it's a trap for the unwary then. What would that be? Because if your client had said, well, we owe you just a little bit less tax, $10 less, then a deficiency notice would have issued. Maybe not for $10. Let's assume that your client had come in and made an argument that they thought we owe less tax than we did. And consequently, there wouldn't have been an agreement. There would have been a notice of deficiency. But I think what you have here under this fact pattern, Your Honor, if I may, is that you have law-abiding taxpayers who under this voluntary tax system, they had an accountant, and they calculated tax according to certain formulas. What no one knew at the time, and of course what was known later at a position on the merits, was that there was this fraud on the market. But if I may say about this point, too, about the compensation event that triggers this bill is not an income. It's not that income flowed into them. It's pieces of paper that one day are valued one way and another day are valued another. And that's how you can be in a situation where you can have a compensation event. But your clients are uniquely situated with regard to those facts. In the real world, there are thousands and thousands of people who engage or are engaging in the same kind of transactions that your client engaged in. I'm not disagreeing that they're singular, Your Honor. I'm not saying that they are singular. However, if you look at the whole catchment pool of taxpayers, because this is a 1040. Assume for purposes of argument that we found a way, a jurisdictional way, to be permitted to greet the merits of your case. Yes, Your Honor. Then how am I going to draw a line between your case and a case of ordinary taxpayer who, for example, Clevenger, who decides that he would like to go to the Court of Federal Claims, but he doesn't pay all the taxes that he owes? Yeah. It's a – what makes your – you're not arguing, are you, that every Tom, Dick, and Harry taxpayer ought to be able to have access to the Court of Federal Claims if they haven't paid in full? No, I'm not arguing that. I'm saying that – I think, Your Honor, I'm saying that – What makes your case different? Well, what makes my case different, first of all, is the large amount and that it really is greater than the assets. Well, it is a large amount, but, I mean, I read the Wall Street Journal, and there are a lot of cats in Wall Street that make more money than Harry. I tried to find out on the IRS website. I just wasn't good enough to figure out how many Americans pay this kind of tax level at this level because this is a compensation. This is a 1040 tax return. But the other thing I think that makes it different, Your Honor, if I may, is that there was an offer in compromise made here, and Your Honor probably certainly knows tax law better than I do, but one of the elements of an offer in compromise is that you cannot pay the tax liability, and you have to demonstrate that somehow to the IRS. So there's been an offer of compromise made here with a demonstrated inability to pay the tax, and the offer of compromise was refused. I think that these are the circumstances that distinguish and help you separate out the cases that I submit to you Congress wanted a forum, a tax payers to have a forum for, and those were people who I would call tax abusers, where there maybe not is an issue so much of whether they can afford the tax. It's that they don't want to pay the tax, you know. So I think, Your Honor, that is an important criteria. It also, I mean, it helps the government. I mean, the government brings us here, you know what I mean, because there was an offer of compromise process that was gone through here unsuccessfully, and I think in that situation, you know, in that situation, there really is no other forum but a tax refund, you know, bringing a tax refund claim square in, not in, you know, not on the guise of a collection hearing or something like that, and you're always sort of, it's on the side. We want a direct focus on whether or not Mr. and Mrs. Daniels are entitled to a tax refund, and the only way to do it is I would submit to you, as the IRS itself said in that letter when they denied the tax refund, which is go to the district court and go to the court of claims, and may I make one other point, if I may, about the district court. You're into your rebuttal time, you realize. I do that. I realize I have a little clock. Just one quick point about FLORA and what I think FLORA does with respect to precedent. The district court, that's where the absoluteness is. The district court has no option. You know, you either prepay the tax or you don't, but there are asymmetries. Even though that jurisdictional statute is the same, there are asymmetries between the court of claims and the district court. A jury trial being a big asymmetry. I mean, as a lawyer, I don't know why you would go, you know, if you lived up in New Jersey, why wouldn't you go to the district court and ask for a jury trial if you could pay the tax? So there are asymmetries, and I would submit to you that under the scheme that Congress provided and given this kind of taxpayer where there's been a hardship. And one other small point. As I was looking over some things yesterday in preparation of this, there was an article cited in FLORA at footnote two, which is the Journal of Taxation, 1958 article, effective tax procedures. And even there, when they were talking about this issue, even there they were not arguing that there should be an absolute rule. They argued that it should be a prepayment rule, but not absolute, because there are situations of hardship. And I would say this is one of them. This is what makes this case different. There's a genuine situation of hardship here. That is why the court of claims said it was untenable. And I see my time is running. Okay. Thank you, Ms. Brown. I appreciate it. Thank you so much. Ms. Lyon. Thank you, Your Honor, and may it please the court. My name is Kathleen Lyon, and I represent the United States in this case. We certainly agree. Before you talk about the tax issues, is there a 1500 hurdle here, too? You know, I'll be honest. I had not thought of that until you mentioned it, and I can't remember whether it was raised below. It wouldn't make any difference whether it was raised below or not. It's jurisdiction. Right. We can't waive jurisdiction even if the case had proceeded. I thought 1500 on its face said that if there's a case that's pending in the U.S. District Court at the time you filed the court of federal claims, there's no jurisdiction there? I would be happy if you would like to speak. Was the issue raised below? I simply don't remember. Were you involved in the case below? No, I was not. I was not the trial attorney. I'm sorry. We certainly agree that there is binding precedent in this case, and that, of course, is subject to the three-judge panel rule. Is there a dispute over the underlying merits of the case apart from the jurisdictional issue? Well, of course, the merits haven't been addressed yet, and they haven't been litigated. But if everything is the way the plaintiffs say it is, is there really a dispute? I mean, if they exercised options and then the company went bankrupt and they reported on their taxes the amount they should have received from the company had the check ever been cut but never got it because the company went bankrupt, I mean, clearly they're not still on the hook for all that money they never got, right? I mean, under the tax law, it just doesn't seem to me on the merits that there's really a dispute here. Well, perhaps I'm misunderstanding your question, but the valuation that occurs occurs on the day that they exercise the options, and they had every ability on that day to sell a certain amount of stock and get that money. They could have sold all the stock and protected themselves, you know, the entire amount of money and moved all of that into a mutual fund to protect themselves and diversify, but they chose to hang on to the entire amount of stock, and that was a risk that they took. And the cases that we cited at the end of our brief regarding the recent dot-com cases, while they didn't raise this issue of fraud on the market per se, I think they all stand for the principle that on the date of exercise of the options, you take on the risk of what happens after that. That's the taxable event. That's the marking time, right, for the gain? I'm sorry? When you exercise the options, the marking time. Yes. Yes, that's the valuation date. I wanted to address just a few points. So for jurisdiction, should we create some sort of exception in cases where there's a hardship? And why, just out of curiosity, I assume this issue was raised below, and you all determined there wasn't a hardship in this case, that they still were required to pay the balance of the tax in order to file a refund. Well, I don't think that there's nothing on the record regarding the offer in compromise. That's what I was wondering about. There's absolutely nothing on record about that. And in any event, she's... So there's no evidence below of a hardship. So even if we wanted to carve out some sort of exception to our existing precedent, which she seems to be asking us to do, there's no evidence or findings of that or anything like that on the record that would allow us, in this case, to even use this case as the basis for such an exception. That's correct. And it's also true that the taxpayers have not raised a claim of any sort of abuse of discretion by the IRS in doing that, and the Court of Federal Claims wouldn't have had jurisdiction to consider that in the first place. Is there any jurisdiction in the federal courts to deny an offer in compromise? I believe it goes to district court, if I'm not mistaken. I've seen cases there, but I know that the Court of Federal Claims doesn't under the APA. I just ask that since you're giving us a little learning about tax, I mean, if there is a judicial review of a denial of an offer of compromise, then you've got a court that will assess whether or not there was a hardship. Correct, correct. But she certainly has not made that claim in any court up to this stage. Let's see. You would agree, I assume, that even if FLORA had never been decided, I suppose I shouldn't say that because the case law in our circuit relies on FLORA, but there is case law in our circuit going back to the old Court of Claims that they're not. That's correct. and that you've got to pay all your tax before you can gain access to the Court of Federal Claims. Yes, that's correct. The first case was Tenasket, but I would direct this Court's attention to its decision in Rockovich, which is the 1991 case. And in that case, along with FLORA and along with the Seventh Circuit decision, there were a series of old Court of Claims cases that looked like they were non-presidential in their face but got converted into presidential status at some later stage in the game. That's correct. And those are binding on this panel. They are binding. And I think it's important to note that in Rockovich, you know, the Court found... That was the point I was trying to make to Ms. Brown. I'm certain she understands it, which is even if, assumed for purposes of argument, that we wanted to cut her some slack, I don't personally think my hands are free to do that. That's correct. That's our position as well. I can write a memo to my entire Court asking my fellow judges to take this case, to vote to take the case in bank in order to create an exception. Well, that's why I wanted to point the Court's attention to the Rockovich case. In that case, this Court decided that the full payment rule applies even when the tax court is not available and even when there's a hardship. And the Court decided that it is up to Congress to make any exception and not the courts. So if this Court has no further questions. Thank you, Ms. Lyon. Ms. Brown, you have... Just very briefly, if I may. A couple minutes left. I did reserve a little time. Your Honor, I just want to draw your attention to the record, page 28 and 29, which is something that the government had submitted in the trial below, which is I guess I'll call it a summary of a docket sheet, if I may use that term, in the IRS. And the entry for 829, it talks about an offer in compromise pending and an entry for 504-2004, offer in compromise rejected. That's on page 29 of the appendix. Thank you very much. I appreciate the Court's attention. Thank you, Ms. Brown. The next case is Helena Lab v. Alphys.